914 F.2d 259
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leland F. WELCH, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, et al., Defendants-Appellees.
 Nos. 89-1585, 89-1586.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1990.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and JOHN W. POTTER, District Judge*
 PER CURIAM.
 
 
 1
 Plaintiff Leland F. Welch, an employee of defendant General Motors Corporation (GM), appeals from the district court's decisions denying his motions to remand his case against GM and his case against defendant Local 599, International Union, United Automobile, Aerospace and Agricultural Workers of America (the Union). Pursuant to GM and the Union's interpretation of the collective bargaining agreement, Welch was denied participation in GM's overtime equalization program due to his medical restrictions. Welch filed separate cases against GM and the Union in state court, alleging that their actions in denying him participation in the overtime program violated the Michigan Handicappers Civil Rights Act (MHCRA).[1] Each defendant removed its case to federal court. The district court first granted Welch's motion to remand in the case against GM, but, after GM removed the case a second time, the court consolidated the two cases and denied Welch's motions to remand in both cases.
 
 
 2
 The district court concluded, considering both cases, that Welch was actually bringing a hybrid section 301/duty of fair representation under the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185;[2] and, therefore, Welch's state law claims were preempted.
 
 
 3
 Welch then filed a document entitled "Election to Proceed Under State Law Only," in which he elected to stand on his right to proceed in state court under state law for violation of his rights under the MHCRA and gave notice that he did not wish to press any claims for relief in federal court under Sec. 301 of the LMRA. In another document he waived any claim or entitlement to seek relief under Sec. 301.
 
 
 4
 The district court found that the plaintiff's cause of action under state law standing alone was not cognizable in federal court for reasons of federal preemption and dismissed each case with prejudice pursuant to Rule 12(b)(6). These appeals followed. Appellants present the following issues on appeal:
 
 
 5
 1. Was the instant case against General Motors Corporation removable to Federal Court under Sec. 301 LMRA, 29 U.S.C. Sec. 185?
 
 
 6
 2. Was the instant case against Local 599 UAW removable to Federal Court under Sec. 301 LMRA, 29 U.S.C. Sec. 185?
 
 
 7
 3. Does federal labor law preempt Plaintiff's claim against General Motors under Michigan's Handicapper's Civil Right Act?
 
 
 8
 4. Does federal labor law preempt Plaintiff's claim against Local 599 UAW under Michigan's Handicapper's Civil Right Act?
 
 
 9
 This Court, upon consideration of the record, the briefs and oral argument of counsel, finds for the reasons hereinafter stated that the district court erred in denying Welch's motion for remand of his case against GM, but did not err in denying Welch's motion to remand his case against the Union.
 
 
 10
 Welch had been employed by GM since October 29, 1964 and was serving as a fork truck operator when he suffered a heart attack in June, 1981. Welch returned to work on January 24, 1984 but was restricted from lifting over 15 pounds, standing or walking full time, and engaging in strenuous activity. Notwithstanding these restrictions, Welch was able to return to his previous position as a fork truck driver.
 
 
 11
 In 1982, GM and the Union had negotiated a collective bargaining agreement that included provisions defining the rights of employees with physical limitations.[3] The agreement provided a degree of preferential treatment for disabled employees. Paragraph 112 of the agreement provides that an employee who is disabled and cannot perform his previous work will be transferred to other work that he is able to do. In addition, paragraph 116 of the agreement provides that, in the event of a reduction in force, disabled employees with sufficient seniority cannot be bumped from their position by nondisabled employees with greater seniority.
 
 
 12
 However, the agreement also contains some disadvantages for disabled employees. GM had implemented an overtime "equalization" system in which non-disabled employees would have equal opportunity to work overtime, even at jobs other than their own. Paragraph 112(b) of the agreement significantly restricts handicapped employees from participating in the equalization program. It provides that handicapped employees will only be eligible to work overtime on their own jobs, even if they are physically capable of working overtime on another job, and they will be charged with having worked the equalization time, even though they did not actually perform such work, thereby further reducing the overtime that they normally would receive in their own jobs.
 
 
 13
 Upon Welch's return to work in his previous position, he was allowed to work overtime on jobs other than his own. In May, 1984, the Union filed a grievance on behalf of one of Welch's co-workers, arguing that paragraph 112(b) precluded Welch from working these overtime hours. Welch argued that paragraph 112(b) did not apply to him since he had not been given a preferential job assignment and that, in any event, the Union was not entitled to restrict his participation in the overtime equalization program based upon his medical restrictions. The Union refused to file a grievance on Welch's behalf after both it and GM concluded that paragraph 112(b) applied to Welch. Welch then appealed the Union's decision to the UAW International Executive Board.
 
 
 14
 While this appeal was pending, Welch filed separate civil actions against GM and the Union in state court alleging in each suit that the limits placed on his right to work overtime violated the MHCRA since his medical restrictions are unrelated to his ability to perform his job. In his complaint against GM, Welch makes no allegation that GM breached the collective bargaining agreement but argues only that the restrictions imposed on him violate the MHCRA. In his complaint against the Union, Welch alleged that the Union violated the MHCRA by promoting and acquiescing in GM's determination that he could not participate in the overtime equalization program and in declining to assist him in gaining redress through the grievance procedures set out in the collective bargaining agreement.
 
 
 15
 The Court first considers issue No. 3, to wit: "3. Does federal labor law preempt Plaintiff's claims against General Motors under Michigan's Handicapper's Civil Right Act?"
 
 
 16
 This Court considered en banc in Smolarek v. Chrysler Corp., 879 F.2d 1326 (6th Cir.1989), precisely the same issue. In reaching its conclusion, the Court held that a claim that an employer violated the MHCRA by discriminating against a handicapped employee whose restrictions are unrelated to job performance is not preempted by section 301 just because the collective bargaining agreement also provides a remedy for the employer's discriminatory conduct. Smolarek, 879 F.2d at 1131-35. The court held that the right that formed the basis of plaintiff's claims under the MHCRA, the right to be free from handicapped discrimination, was created by the MHCRA and not solely by the collective bargaining agreement and was, therefore, not inextricably intertwined with the collective bargaining agreement. Id.
 
 
 17
 The majority in Smolarek, speaking through Judge Wellford, considered a series of Supreme Court cases interpreting section 301 of the LMRA. They are: Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985); Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987); and Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962).
 
 
 18
 Rather than paraphrase the court's finding, we quote at length from Smolarek:
 
 Removal and Sec. 301 Preemption
 
 19
 Ordinarily, the question of removability to federal court under 28 U.S.C. Sec. 1441 turns upon application of the "well-pleaded complaint rule." Federal jurisdiction exists only when a plaintiff's properly pleaded complaint presents a federal question on its face.
 
 
 20
 The presence or absence of federal-question jurisdiction is governed by the "well pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U.S. 109, 112-113, 57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid the federal jurisdiction by exclusive reliance on state law.
 
 
 21
 Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (footnote omitted); see also Oklahoma Tax Comm'n v. Graham, --- U.S. ----, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989) (per curiam) (discussing Caterpillar ). In the context of employment-related actions, however, a claim purportedly based solely on state law may, under appropriate circumstances, be removable because Sec. 301 of the LMRA has preempted that particular area of state law. In other words, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430. Thus, in the cases we now consider, the issues of federal preemption and removability largely merge; we must focus on whether plaintiffs' state-law claims are preempted by Sec. 301 so as to place them within the scope of the "complete preemption" corollary to the well-pleaded complaint rule.
 
 
 22
 In a series of cases, the Supreme Court has made clear that Sec. 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement. See Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); see also Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The purpose of this rule is to require that all claims raising issues of labor contract interpretation be decided according to the precepts of federal labor law in order to prevent inconsistent interpretations of the substantive provisions of collective bargaining agreements. Lucas Flour, 369 U.S. at 103, 82 S.Ct. at 576.
 
 
 23
 Thus, Lueck faithfully applied the principle of Sec. 301 preemption developed in Lucas Flour: if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state law principles as there are States) is pre-empted and federal labor-law principles--necessarily uniform throughout the nation--must be employed to resolve the dispute.
 
 
 24
 Lingle, 108 S.Ct. at 1881 (footnotes omitted).
 
 
 25
 In Allis-Chalmers v. Lueck, the Court expanded the preemptive reach of Sec. 301 to state-law tort claims. In Lueck the Court considered whether a state-law cause of action for bad faith handling of an insurance claim was preempted because the insurance plan provisions were included in a collective bargaining agreement. The Court found the state claim was preempted because an essential element of the tort (i.e., bad faith handling) required interpretation of the labor agreement regarding whether the plaintiff was due payments. Because the duty claimed to have been breached was "derive[d] from the rights and obligations established by the contract," the Court reasoned that "any attempt to assess liability here inevitably will involve contract interpretation." Id. 471 U.S. at 217, 218, 105 S.Ct. at 1914, 1914 [sic].
 
 
 26
 Although the court limited its holding in Lueck to the specific facts of that case and made clear that not "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement ... necessarily is pre-empted by Sec. 301," id. at 220, 105 S.Ct. at 1915, the Court did attempt to define the preemptive scope of Sec. 301:
 
 
 27
 Our analysis must focus, then, on whether the [state-law cause of action] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract.
 
 
 28
 Id. at 213, 105 S.Ct. at 1912.
 
 
 29
 At the same time, we must keep in mind that Section 301 does not ... require that all "employment-related matters involving unionized employees" be resolved through collective bargaining and thus be governed by a federal common law created by Sec. 301.... The Court has stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by Sec. 301 or other provisions of the federal labor law." Allis-Chalmers, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985).
 
 
 30
 Caterpillar, 482 U.S. at 396 n. 10, 107 S.Ct. at 2432 n. 10 (emphasis added). See also Oklahoma Tax Comm'n v. Graham, --- U.S. ----, ----, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) (per curiam). The Supreme Court has recently then reiterated what it stated earlier: "[E]ven under Sec. 301 we have never intimated that any action relating to a contract within the coverage of Sec. 301 arises exclusively under that section." Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust, 463 U.S. 1, 25 n. 28, 103 S.Ct. 2841, 2854 n. 28, 77 L.Ed.2d 420 (1983); see also Caterpillar, 482 U.S. at 396 n. 10, 107 S.Ct. 2432 n. 10. "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court." Caterpillar, 482 U.S. at 398, 107 S.Ct. at 2433 (footnote omitted) (emphasis added).
 
 
 31
 In its recent decision addressing asserted Sec. 301 preemption of state-law claims, the Supreme Court has attempted to clarify its language in Lueck regarding what kind of "independence" of state-law actions from collective bargaining agreements permits a finding of non-preemption. In Lingle, 108 S.Ct. 1877 (1988), the Court held that a unionized employee's state-law action based on Illinois's tort of retaliatory discharge for filing a workers' compensation claim was not preempted by Sec. 301 because "the state-law remedy ... is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for Sec. 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." 108 S.Ct. at 1882 (emphasis added) (footnote omitted). In so concluding, the Court rejected the contentions of the employer that the retaliatory discharge action was not independent because resolution of the state-law claim would implicate the same factual analysis as would a grievance brought under the CBA's "just cause" provision. Id. Thus, Lingle stands as the Court's latest word on Sec. 301's preemptive scope and, as such, will guide our decision in these cases.
 
 
 32
 Smolarek, 879 F.2d at 1329-30. See also, Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033 (6th Cir.1989); O'Shea v. Detroit News, 887 F.2d 683 (6th Cir.1989), wherein reference is made to Smolarek, and the above cases are similarly analyzed.
 
 
 33
 In Smolarek, Smolarek alleged in the Michigan State Court discrimination under the MHCRA and workers' compensation retaliation. He did not allege any violation of the collective bargaining agreement between the Union and Chrysler. Fleming, whose case was consolidated with Smolarek's on appeal alleged he was discharged because of his express intent to file a workers' compensation claim and an alleged violation of MHCRA.
 
 In reference to MHCRA, both claimed that:
 
 34
 The rights created by HCRA are in addition to and independent of any rights created by the UAW-Chrysler collective bargaining agreement. They argue that these rights exist regardless of the terms of the collective bargaining agreement and apply equally to union and nonunion employees. Furthermore, they assert that the individual rights established by HCRA are the type of "nonnegotiable" rights that Lueck exempted from Sec. 301 preemption and that cannot be bargained away by a collective bargaining unit. In summary, plaintiffs contend that success on the HCRA claim is not contingent on showing that any provision of the collective bargaining agreement was breached; therefore, the federal policy concern regarding interpretive uniformity is not implicated in these cases as set out in Lingle.
 
 
 35
 Smolarek, 879 F.2d at 1331.
 
 
 36
 GM now makes the same arguments as made by Chrysler and alleges that plaintiff's claims are substantially dependent upon an analysis and interpretation of the GM-UAW Local 599 contract governing entitlement to overtime and therefore, plaintiff's claims under MHCRA constitute a hybrid section 301/duty of fair representation. GM asserts plaintiff's claims are preempted.
 
 
 37
 The Smolarek opinion provides answers to GM's assertions as follows:
 
 
 38
 Under HCRA, an employee has the initial burden of proving that the employer violated the Act. Gloss v. General Motors Corp., 138 Mich.App. 281, 360 N.W.2d 596, 598 (1984). Smolarek might carry this burden by demonstrating that Chrysler had refused to reinstate him following his disability leave because of his seizure disorder which he first contends does not prevent or disqualify him from working at his former position. Id. 360 N.W.2d at 598, 599. The fact that the collective bargaining agreement contains a provision regarding reinstatement does not compel a finding of Sec. 301 preemption. "The mere fact that a broad contractual protection against discriminatory ... discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." Lingle, 108 S.Ct. at 1885, quoted in Ackerman v. Western Elec. Co., 860 F.2d 1514, 1517 (9th Cir.1988). Even if Smolarek may have been able to charge Chrysler under these circumstances with a violation of the collective bargaining agreement, he did not choose to do so and this does not mean that Sec. 301, even if applicable but not utilized by plaintiff, preempts the claim. See Caterpillar, 482 U.S. at 396, 107 S.Ct. at 2431. This is not a case in which the duty claimed to have been breached (i.e., the duty not to discriminate) arises solely from the collective bargaining agreement. Cf. International Brotherhood of Electrical Workers v. Hechler, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (duty to provide safe work place derived solely from collective bargaining agreement). Nor is this a case in which evaluation of Chrysler's prima facie liability will necessarily require determination of whether the collective bargaining agreement has been breached. Cf. Lueck, 471 U.S. 202, 105 S.Ct. at 1906.
 
 
 39
 Smolarek, 879 F.2d at 1332-33.
 
 
 40
 The Smolarek opinion suggests that Chrysler (GM) may assert in state court that its treatment of Smolarek was allowed or required by the collective bargaining agreement. However, the availability of this defense does not support removal to federal court and the finding of preemption.
 
 
 41
 In O'Shea, which in part involved a MHCRA issue, the court said the following:
 
 
 42
 We hold that Lingle and Smolarek save the plaintiff's claims from preemption. With respect to the discrimination claim, the right not to be discriminated against in employment decisions based on handicap or age is independent of the question of whether O'Shea was demoted or not. The plaintiff in this case may try to show, for example, that the midnight shift was undesirable and that older or handicapped employees were assigned to it more often than younger or non-handicapped ones. The defendant could then defend by arguing that it had the right to transfer its employees in order to improve its paper, just as the defendants in Lingle and Smolarek could argue that they had good cause to fire their employees there. The point is that Michigan employees have the right not to be discriminated against on the basis of age or handicap without regard to the collective bargaining agreement's language about an employee's rights. The discrimination claims are therefore not preempted.
 
 
 43
 O'Shea, 887 F.2d at 687. Thus, while GM may have a defense based on the collective bargaining contract, the defense alone is not sufficient to permit removal.
 
 
 44
 GM endeavors to distinguish Smolarek on the grounds that in that case the union was not a party. Of course, in a case where 301 preemption is urged, the court must be aware that a union is no stranger to the case. In fact, in Smolarek, the Union appeared as an amicus curiae and filed a brief. See Smolarek, 879 F.2d at 1328 n. 1. However, in that case the UAW argued against the company's position on preemption.
 
 
 45
 GM's argument that if plaintiff's claim against the Union is preempted, then likewise plaintiff's claim against GM is preempted will be discussed further after the Court considers plaintiff's issue No. 4, "4. Does federal labor law preempt Plaintiff's claim against Local 599 UAW under Michigan's Handicapper's Civil Right Act?"
 
 
 46
 Plaintiff in the case sub judice alleged in his complaint against the Union that:
 
 
 47
 15. The Defendant is a "labor organization" within the meaning and protections of the "Michigan Handicappers Civil Rights Act," MCLA 37.1101 et seq.
 
 
 48
 16. Section 204 of said Act, MCLA 37.1204, provides in relevant part:
 
 A labor organization shall not:
 
 49
 * * *
 
 
 50
 * * *
 
 
 51
 (b) Limit, segregate, or classify membership, or applicants for membership, or classify or fail or refuse to refer for employment an individual in a way which would derive or tend to deprive an individual of employment opportunities, or which would limit employment opportunities or otherwise adversely affect the status of an employee or of an applicant for employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
 
 
 52
 (c) Cause or attempt to cause an employer to violate this article.
 
 
 53
 (d) Fail to fairly and adequately represent a member in a grievance process because of the member's handicap.
 
 
 54
 The Court finds that plaintiff's claim against Local 599 UAW is preempted for the reasons set forth in Maynard v. Revere Copper Products, Inc., 773 F.2d 733 (6th Cir.1985).
 
 
 55
 In Maynard, the court wrote as follows: "The duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation." Id. at 735. In Smolarek, 879 F.2d at 1334 n. 4, the court reconciled its holding with Maynard as follows:
 
 
 56
 4. This conclusion is not inconsistent with our decision in Maynard v. Revere Copper Products, Inc., 773 F.2d 733 (6th Cir.1985). There we found that an employee's claim for damages against his union for breach of the union's duty of fair representation, brought pursuant to a provision of Michigan's HCRA, was preempted by Sec. 301. The holding in Maynard was based on the fact that the HCRA fair representation provision "created no new rights for an employee and imposed no duty on a union not already clearly present under existing federal labor law." Id. at 735. Unlike the fair representation duty considered in Maynard, however, the duty not to discriminate based on handicap is not a duty already existing in the federal labor law. Therefore, the concerns regarding interpretative consistency that Maynard raised are not present in the instant appeal.
 
 
 57
 Appellant argues that, although he dismissed his 301 claims against the Union, he still has a viable claim for duties imposed on the Union under sections 204(b) and (c) of the MHCRA quoted above. While Maynard dealt only with 204(d), certainly the thrust of the decision was that 204(b) and (c) were subsumed within the duty of fair representation.
 
 
 58
 Since appellant's state law claims against the Union were preempted by section 301, appellant's motion to remand was properly denied. Since he waived any 301 claim, the dismissal of his claims against the Union was proper.
 
 
 59
 In this case, GM cannot ride on the Union's coattails. Appellant has not alleged a 301 hybrid action against GM. Cf. Breininger v. Sheet Metal Workers Int'l Assoc., Local Union No. 6, 110 S.Ct. 424 (1989); 58 U.S.L.W. 4023, 4027.
 
 
 60
 Since our findings as to Issue Nos. 3 and 4 are dispositive, it is not necessary to comment on Issue Nos. 1 and 2.
 
 
 61
 The order of the district court denying remand in Case No. 86CV40485FL, Welch v. General Motors Corporation, Buick Motor Division, is REVERSED, and the case is REMANDED to the Michigan state court. The order of the district court in Case No. 85-40230 is, for the reasons heretofore expressed, AFFIRMED.
 
 
 
 *
 The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Sec. 3.550(202 Employer prohibitions.] Sec. 202. (1) An employer shall not:
 * * *
 (b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
 (c) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
 * * *
 (e) Discharge or take other discriminatory action against an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job.
 * * *
 (g) Discharge or take other discriminatory action against an individual when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job.
 Mich.Stat.Ann. Sec. 3.550(202) (Callaghan 1985).
 Sec. 3.550(204) Labor organizations prohibitions. Sec. 204. A labor organization shall not:
 * * *
 (b) Limit, segregate, or classify membership, or applicants for membership, or classify or fail or refuse to refer for employment an individual in a way which would deprive or tend to deprive an individual of employment opportunities, or which would limit employment opportunities or otherwise adversely affect the status of an employee or of an applicant for employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
 (c) Cause or attempt to cause an employer to violate this article.
 [ (d) Fail to fairly and adequate [sic] represent a member in a grievance process because of the member's handicap.] [MCL Sec. 37.1204.)
 Mich.Stat.Ann. Sec. 3.550(204) (Callaghan 1985).
 
 
 [2]
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties
 
 
 [3]
 (112) Seniority employees who, because of physical limitations specified by the Buick Medical Department, are unable to perform work to which they are assigned, may be transferred to other jobs in their occupational group or to other occupational seniority groups in their department or any other department in the factory or plant on work of a more suitable nature. Such transferred employees will displace employees with less seniority. Once placed, such medically restricted employees will be subject to the following provisions:
 (b) Such employees will be eligible to work overtime hours only on their respective job. All other overtime hours which would have been available, had no restrictions existed, will be charged.
 (116) In a reduction in force, an employee with a physical limitation, specified by the Buick Medical Department, will be subject to the following:
 (a) Employees with Class I restrictions will be retained in their respective factory on a job in their occupational group regardless of seniority provided they have sufficient seniority to remain at their present job level, Buick-wide.